RANDOLPH, Justice,
dissenting:
¶ 30. The right of individuals to a safe and secure home, free of interference and intrusions by the government, is recognized and protected by the federal and state Constitutions and state criminal statutes. The fourth amendment to the U.S. Constitution recognizes individuals’ rights to be free of governmental interference in their own homes. U.S. Const, amend. IV (“[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.... ”). Criminal statutes — such as the burglary statute *1094 under which Brown was convicted — extend this protection to be free of intrusion and invasion by fellow citizens. Miss.Code Ann. § 97-17-19 (Rev.1996). Today’s decision rejecting home burglaries as crimes of violence for state sentence-enhancement purposes weakens this fundamental protection and flies in the face of all citizens’ right to be safe and secure from intrusion and invasion by recidivists.[32]
¶ 31. The majority is correct that Section 99-19-83 does not define “crime of violence.” Thus, we must look elsewhere. The majority suggests a new rule that the only other provisions of law that inform the meaning of a statute are those contained within the same chapter that includes the subject statute, while spurning all other statutes addressing the same subject or matter. (Maj. Op. at ¶ 7).
¶ 32. The majority finds it inappropriate to read Section 99-19-83 in pari mate-ria with Sections 99-15-107 and 47-7-3(1 )(h), espousing that these statutes are unrelated to the matter or subject of the case before us. (Maj. Op. at ¶ 24). In pari materia (the same matter or subject) is a common maxim; statutes in pari materia are to be construed together. This maxim has been applied in numerous cases by comparing statutes not in the same chapter (as the majority suggests should be the rule), or even in the same section. Our case law dictates that, “[i]n construing statutes, all statutes in pari materia are taken into consideration, and the legislative intent deduced from a consideration as a whole.” Lamar Cty. School Bd. v. Saul, 359 So.2d 350, 353 (Miss.1978) (emphasis added) (citing Jackson Cty. v. Worth, 127 Miss. 813, 90 So. 588 (1922)), quoted in Roberts v. Miss. Republican Party State Executive Comm., 465 So.2d 1050, 1052 (Miss.1985) (comparing Miss.Code Ann. § 25-61-7 to Miss. Code Ann. § 45-1-21). The majority grafts a heretofore unknown exception without citation of authority for such a constrained application of the maxim. (Maj. Op. at ¶ 7).
¶ 33. Whether the subject or matter at issue is (1) the extent or degree of penalty or punishment for this latest crime or (2) what is a crime of violence, sections of chapters 99 and 47 resolve the issue. These sections include the penalty or punishment to be imposed for crimes of violence, of which the Legislature clearly and unequivocally has published a list including burglary of an inhabited dwelling. The Legislature has enacted laws defining crimes and, through numerous statutes, has established a broad range of penalties for their commission — ranging from no incarceration to death or life in prison without the possibility of parole. See, e.g., Miss.Code Ann. §§ 47-7-1 to 47-7-83 (probation and parole), 99-19-1 to 99-19-401 (judgment, sentence, and execution). This range of penalties includes enhanced punishment for career criminals. See Miss. Code Ann. §§ 99-19-81 (maximum allowable sentence to be imposed for habitual offenders), 99-19-83 (life imprisonment for habitual offenders previously convicted of a violent crime). Within these sections, Section 99-15-107 clearly and unambiguously states that burglary of a dwelling is a crime of violence. Miss.Code Ann. § 99-15-107 (Rev.2007) (addressing eligibility for pretrial intervention). Another section, 47-7-3, specifically excludes burglary of a dwelling from being a nonviolent crime. Miss.Code Ann. § 47 — 7—3(l)(h) (Rev.2011) (addressing parole eligibility and defining “nonviolent crime” as “a felo *1095 ny other than ... burglary of an occupied dwelling ...”). These sections-sentencing options regarding punishment — are in pari materia with Section 99-19-88, addressing the same subject or matter. They clearly and unequivocally relate to sentencing options within the Legislature’s prerogative.[33] The analysis should end here: the Legislature unambiguously has declared that burglary of a dwelling is a crime of violence. This Court “is not free to disregard the legislative determination that the nature of this crime constitutes a crime of violence.” Brown, 102 So.3d at 1138 ¶ 28 (Carlton, J., specially concurring). Accordingly, the majority errs by resorting to the rule of lenity,[34] then creating another rule of construction, and, finally, declaring the Court’s own definition of a crime of violence.
¶ 34. The rule of lenity only applies after all other attempts to determine the Legislature’s intent have failed. The United States Supreme Court explained in 1820 that:
The rule that penal laws are to be construed strictly ... is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment.
United States v. Wiltberger, 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37 (1820) (emphasis added). The U.S. Supreme Court further expounded as follows:
[The rule of lenity,] as is true of any guide - to statutory construction, only serves as an aid for resolving an ambiguity; it is not to be used to beget one. ... The rule comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers. That is not the function of the judiciary.
Callanan v. United States, 364 U.S. 587, 596, 81 S.Ct. 321, 326, 5 L.Ed.2d 312 (1961) (emphasis added). Put another way, the rule of lenity is applicable only where, after the other rules of statutory interpretation have been applied, reasonable doubt remains. Moskal v. United States, 498 U.S. 103, 108, 111 S.Ct. 461, 462, 112 L.Ed.2d 449 (1990) (“[t]he doctrine applies only to those situations in which a reasonable doubt persists ... even after resort to [the other rules of statutory interpretation]”); see Johnson v. United States, 529 U.S. 694, 713, 120 S.Ct. 1795, 1807, 146 L.Ed.2d 727 (2000) (“[l]enity .applies only when the equipoise of competing reasons cannot otherwise be resolved”).
¶ 35. In Part I, paragraph 7, the majority reveals that the roots of the rule of lenity are related to notice of a crime, not punishment, for Brown should not “be forced to speculate ... whether his conduct is prohibited. (Maj. Op. at ¶ 8). Can there be any doubt that Brown, a career criminal, knew that his conduct was prohibited, and was not forced to speculate, given that he previously had been imprisoned for the same offense, among others? In 1996, Brown was convicted of possession of a controlled substance, grand larceny, receiving stolen property, and burgla *1096 ries of two separate dwellings. He was sentenced to a total of twenty-eight years. In 2001, he was convicted of jail escape and possession of a controlled substance, and was sentenced to an additional five years and six months. In 2008, Brown again escaped from jail. Before sentencing in this case, the trial court was informed that he had been convicted of capital murder.[35] Brown was convicted of jail escape and received the habitual-offender sentence of which the majority relieves him today.
¶ 36. I turn next to Part II, paragraph 9, where the majority errs by looking to this Court’s treatment of a separate crime — breaking and entering — to inform its analysis. The majority tells us that breaking and entering is not a crime of violence. I agree. The Legislature has not declared otherwise. Breaking and entering and burglary of a dwelling are horses of different colors, and an analysis of McLamb does nothing to enlighten the issue before us: has the Legislature declared that burglary of a dwelling is a crime of violence? The majority readily recognizes the Legislature had that right. (Maj. Op. at ¶ 21).
¶ 37. The majority then casts aside the plain meaning of the words “crime of violence,” mischaracterizing the view that the term includes acts involving the potential or threat of violence as “expansive.” (Maj. Op. at ¶ 14). However, such a view is firmly rooted in the ordinary meaning of the words. Webster’s Dictionary defines “violence” as “[p]hysical force employed so as to violate, damage, or abuse.” Webster’s II New College Dictionary 1233 (2001). To “violate” is “[t]o break intentionally or unintentionally” or “[t]o injure the person or property of.... ” Id. (emphasis added). Black’s Law Dictionary defines “violent crime” as “[a] crime that has as an element the use, attempted use, threatened use, or substantial risk of use of physical force against the person or property of another.” Black’s Law Dictionary 429 (9th ed.2009) (emphasis added). The common and ordinary meaning of crime of violence is a crime that involves the threatened use of, or risk of use of, physical force against a person or property of another so as to violate, damage, injure, or abuse. Crimes of violence involve not only actual use of force, but also include threatened use or risk of use of force, against the person or property or another — described by the trial judge as “an absolute threat to the inhabitants of the house,” and by Judge Roberts in his dissent in the Court of Appeals as the “threat of imminent violence.”[36] Brown v. State, 102 So.3d 1130, 1144 (Miss.Ct.App. Mar.27, 2012) (Roberts, J., dissenting).
¶ 38. All can agree that burglary requires some measure of force. At the time *1097 of Brown’s conviction for burglary of a dwelling, his crime was defined as “breaking and entering any dwelling house, in the day or night, with intent to commit a crime. ...” Miss.Code Ann. § 97-17-19 (Rev.1996) (emphasis added), repealed by Laws 1996, Ch. 519, § 2 (Apr. 11, 1996). It is impossible to break into a dwelling house without some measure of force, and to break into and enter another’s dwelling — a person’s castle — with the intent to commit a crime is, by nature, violative of that person’s right to be secure from intrusion and invasion. Applying the ordinary meaning of the words reveals that burglary of a dwelling is a crime of violence.
¶ 39. The majority next points out that burglary of a dwelling was codified in a property-crime chapter of the Mississippi Code. The majority seemingly accepts that common-law burglary was an offense against habitation, rather than against property, but suggests that we should ignore the common law, because the law was codified as a crime against property. (Maj. Op. at ¶ 15). But arbitrarily defining burglary of a dwelling as nonviolent based on its codification in a chapter labeled “Crimes Against Property” is without support. Our statutes do not change the common law unless the Legislature clearly indicates that it intended to effect such a change. See Clark v. Luvel Dairy Prods., Inc., 731 So.2d 1098, 1104 (Miss.1998) (“Statutes are not to be understood as affecting any change in the common law beyond that which is clearly indicated .(citations omitted)). The majority fails to identify where or when the Legislature stated its intent to change the common law. The truth is that such a legislative declaration does not exist. Burglary of a dwelling appears in Title 97 (“Crimes”), Chapter 17 (labeled by the publisher as “Crimes Against Property”). See “User’s Guide,” Miss.Code Ann. at xii (“[hjeadings or ‘catchlines’ for Code sections and subsections are generally created and maintained by the publisher. They are mere catchwords and are not to be deemed or taken as the official title of a section or as a part of the section”) (emphasis added). Furthermore, not all crimes against property are found in chapter 17.[37] See, e.g., Miss.Code Ann. §§ 97-7-9 (Rev.2006) (defacing capítol building), 97-9-3 (tampering with court records), 97-9-77 (willfully altering or destroying a will). The truth is that burglary of a dwelling possesses characteristics of both a crime against property and a crime against the person. It involves a criminal act affecting one’s property. As the trial court astutely found, it is also “a crime against someone who is living in their castle ... [a]nd when somebody burglarizes that castle, ... that is an absolute threat to the inhabitants of the house.... ” The publisher’s chapter label is not a clear and convincing indication that the Legislature intended to strip the offense of its crime-against-the-person characteristics recognized at common law. I cannot accept that the Legislature intended, by codifying burglary, to declare that it abandoned the common law and its declarations elsewhere that burglary of a dwelling is a violent crime.
¶ 40. Finally, in Part III, the majority instructs the Legislature that it is permitted to declare that burglary of a dwelling is a crime of violence (blind to the fact that the Legislature already has done so). *1098 Thus, the majority offers an unsupported and unnecessarily complicated analysis, stemming from its refusal to read Section 99-19-83 in pari materia with other statutes on the same subject or matter and accept the plain words enacted by the Legislature according to their common and ordinary meaning.
¶ 41. This new law, requiring proof of a violent act, is without foundation. It is our solemn duty to give all statutes their ordinary meaning — a meaning that is in harmony with the Legislature’s clear statement of intent that burglary of a dwelling is a crime of violence. Today’s opinion is an unwarranted intrusion upon legislative decision-making power. Legislating from the bench is not only unwise; it is unconstitutional. The majority’s repudiation of the Legislature’s explicit words is an act of judicial activism that I cannot join. I would vacate the opinion of the Court of Appeals and affirm the trial court’s sentence of Brown as a habitual offender to life imprisonment without eligibility for probation or parole.
CHANDLER AND PIERCE, JJ., JOIN THIS OPINION.

. Federal sentencing guidelines identify convictions based on burglary of a dwelling under state law as crimes of violence. See United States v. Fry, 51 F.3d 543, 546 (5th Cir.1995) (" ‘crime of violence’ is defined ... as ... burglary of a dwelling ...").

. Appellate courts of this state have referenced other code sections to determine whether a crime is a crime of violence under Section 99-19-83. See Roger v. State, 919 So.2d 1058, 1061 (Miss.Ct.App.2005) ("We ... find it appropriate to consider those designations [of crimes of violence in Section 99-15-107] in the application of Section 99-19-83”).

. The principle of statutory construction relied upon by the majority, clothed with the term strict construction, is the rule of lenity.

. It is unclear why the State did not seek to amend the indictment to include Mitchell’s conviction for capital murder. During sentencing, the State asserted the following:
As the Court is aware we do not intend to offer the order of conviction into evidence at this point, but we would ask the Court to take into consideration that the defendant has also since the escape been convicted of capital murder here in Harrison County in the Second Judicial District.

. The imminent threat of violence is present in every burglary of a dwelling — even when the dwelling is unoccupied — as a resident may enter the previously unoccupied dwelling while the burglar is present, exposing himself or herself to violence. Common experience dictates the conclusion that burglaries of dwellings mentally and emotionally affect the victims. Such crimes can and do generate the same feelings of victimization, insecurity, fear, and apprehension that plague victims of robberies, assaults, and rapes. Many victims of home burglaries (home or away) justifiably are left in fear and feel unsafe in their own castles, upon their return from Canton (Mississippi or China).

. Likewise, not all crimes against persons are codified in chapter 3, labeled "Crimes Against the Person” by the publisher. See, e.g., Miss.Code Ann. §§ 97-5-1 (abandoning a child under six), 97-5-3 (deserting, neglecting, or refusing to support child under eighteen), 97-9-55 (threatening or influencing judges), 97-27-14 (endangerment by bodily substance), 97-29-61 (voyeurism).